IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT CHARLES CARLSON, JR.,      §
TDCJ-CID NO. 1256678,             §
                                  §
              Petitioner,         §
                                  §
v.                                §
                                  §     CIVIL ACTION NO. H-07-0797
NATHANIEL QUARTERMAN, Director,   §
Texas Department of Criminal      §
Justice, Correctional             §
Institutions Division,            §
                                  §
              Respondent.         §

## MEMORANDUM OPINION AND ORDER

Petitioner, Robert C. Carlson, has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his state court conviction of reckless injury to a child (Docket Entry No. 1). Pending before the court is Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 11). For the reasons stated below, Respondent's Motion for Summary Judgment will be granted, and Carlson's Petition for a Writ of Habeas Corpus will be denied.

## I.  Background

Carlson is an inmate confined by the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID), pursuant to his conviction and sentencing for the offense of reckless injury to a

child in cause number 988532-A in the 174th Judicial District Court

of Harris County, Texas.[1]

The facts of the underlying crime were summarized by the First

Court of Appeals as follows:

> [Carlson] and his girlfriend, April Faterkowski,
> lived together and had a son, C.C., on February 6, 2003.
> C.C. was a healthy baby.  Faterkowski took care of him
> for six weeks while she was on maternity leave.
> Thereafter, C.C. was cared for by [Carlson], Faterkowski,
> and her mother, Jacqueline Glass.  [Carlson] was
> responsible for taking care of C.C. primarily in the
> evenings from about 6:00 p.m. to 10:00 p.m., while
> Faterkowski was at work.
>
> On April 5, 2003, Glass stopped by [Carlson]'s house
> to check on C.C. because he had been constipated and had
> not eaten for two days.  Glass was not comfortable with
> [Carlson] taking care of C.C.  She found [Carlson] alone
> with C.C., who was lying on the couch in a daze.  When
> Glass picked him up, C.C. was limp and began vomiting.
> Glass believed that C.C. had been over-medicated.  Glass
> told [Carlson] that C.C. needed to be taken to the doctor
> or the emergency room.  [Carlson] did not seem concerned
> about C.C. and acted as if he did not want to take care
> of him.
>
> At Glass's prompting, [Carlson] called Faterkowski,
> and they both took C.C. to the Cypress Fairbanks Hospital
> ("Cy-Fair") emergency room.  Dr. Juan Cavazos examined
> C.C. and determined that he was awake and alert.
> Faterkowski told the doctor about C.C.'s vomiting and
> constipation, but did not mention any history of shaking
> or loss of consciousness.  Dr. Cavazos testified that he
> noticed nothing abnormal regarding C.C.'s neurological
> state.  As a precaution, Dr. Cavazos ordered blood tests
> and a chest x-ray, but did not find anything abnormal.
> C.C. was discharged about 7:30 p.m. and went home with
> Faterkowski and [Carlson].

---

[1]Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8,
pp. 35-36.

About 3:00 a.m. on April 6, Faterkowski and [Carlson] were awakened by C.C.'s grunting. [Carlson] carried the baby into the living room and told Faterkowski to go back to sleep because she had to work the next day. About 15 minutes later, Faterkowski got up and found C.C. seemingly asleep on the couch with [Carlson]. When [Carlson] took Faterkowski to work at 10:00 a.m., C.C. was still not awake and was lying on the couch. Glass arrived at [Carlson]'s house around 11:00 a.m. and noticed that C.C. appeared different from the day before. C.C. was moaning and posturing with his right arm in front of his body. His right eye drooped more than his left. [Carlson] seemed frustrated and irritated, but unconcerned about the baby's noises or body movements. Glass took C.C. home with her and called C.C.'s pediatrician. After several hours, C.C. began having seizure-like symptoms.

[Carlson] and Faterkowski took C.C. back to the Cy-Fair emergency room around 9:00 p.m. that night. On this visit, Dr. George Pettit noticed that C.C. had decerebrate posturing, his right eye-lid was droopy, and his right pupil was nonresponsive to light, all of which were symptoms indicative of a brain injury. Dr. Pettit also noticed that C.C. had a stiff neck and tense fontanel, indicating internal pressure. Dr. Cavazos saw C.C. that evening and testified that his condition was completely different from that of the night before. Blood tests and a CAT scan indicated possible bleeding in the head.

C.C. was moved to Texas Children's Hospital on April 7, 2003 at about 1:15 a.m., where he was examined by Dr. Fernando Stein, chief of the intensive care unit at Texas Children's Hospital. Dr. Michael Morriss, a pediatric neuroradiologist, read C.C.'s MRI and CAT scans. The tests revealed that C.C. had sustained two injuries: a small, old injury that would have led to vomiting, and a new, larger injury of the entire brain, which caused retinal hemorrhaging, a symptom of shaken-baby syndrome.

Dr. Stein ruled out all blood disorders and determined that C.C. had sustained a non-accidental, traumatic injury. C.C. was ultimately diagnosed with a diffuse axonal injury to his brain, which is usually caused when a child is shaken, resulting in internal

-3-

bleeding, oxygen loss, and swelling of the brain.  The injury is immediately incapacitating and can lead to seizures, lost consciousness, and breathing difficulties. C.C.'s brain deteriorated to water after the second injury, and was thus non-functional.  C.C. will never be able to walk, to talk, to think, to see, or to have any of his senses.[2]

Carlson was indicted for the offense of intentional and knowing injury to a child, enhanced by a previous felony conviction of burglary of a habitation.[3]  He pleaded not guilty to the charge and not true to the enhancement conviction.[4]  On August 10, 2004, a jury found Carlson guilty of the lesser included second-degree felony offense of reckless injury to a child, with an affirmative finding of use of a deadly weapon, and sentenced him to fifty-five years' imprisonment and a $10,000 fine.[5]

Carlson appealed his conviction to the First Court of Appeals of Texas, arguing that the evidence was legally and factually insufficient to support his conviction.[6]  The Court of Appeals

---

[2]Carlson v. State, No. 01-04-00880-CR, slip op., 2005 WL 3315252, at *1-2 (Tex. App. -- Houston [1st Dist.] November 4, 2004, pet. ref'd) (mem. op., not designated for publication), contained in Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8, pp. 40-43.

[3]Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8, pp. 33-34.

[4]Id. at pp. 31, 35.

[5]Id. at p. 35.

[6]Carlson v. State, No. 01-04-00880-CR, Brief for Appellant.

-4-

affirmed the judgment of the trial court.[7] Carlson filed a petition for discretionary review in the Texas Court of Criminal Appeals, which refused the petition on May 3, 2006.[8]

On December 4, 2006, Carlson filed a state application for a writ of habeas corpus alleging that he received ineffective assistance of trial and appellate counsel and that the evidence was insufficient to support his conviction.[9] The trial court entered findings of fact and conclusions of law and recommended that relief be denied.[10] The Texas Court of Criminal Appeals denied relief without written order on the findings of the trial court on February 21, 2007.[11]

Carlson filed the pending federal habeas corpus petition on March 5, 2007, claiming that the evidence presented at trial was insufficient to support his conviction, that he received ineffective assistance of trial counsel, and that he received

---

[7]Carlson v. State, No. 01-04-00880-CR, slip op., 2005 WL 3315252, at *7 (Tex. App. -- Houston [1st Dist.] December 8, 2005, pet. ref'd) (mem. op., not designated for publication), contained in Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8, pp. 39-54.

[8]Carlson v. State, No. PD-0232-06, 2006 Tex. Crim. App. LEXIS 875, at *1.

[9]Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8, pp. 2-13.

[10]Id. at pp. 25-27.

[11]Id. at cover.

ineffective assistance of appellate counsel.[12]  Respondent moved for summary judgment.[13]

## II.  <u>Standard of Review</u>

### A.  Habeas Corpus

Carlson's federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2068 (1997) (holding that AEDPA applies to noncapital cases filed after its effective date, April 24, 1996).  The intent of the AEDPA is to avoid federal habeas "retrials" and "ensure that state-court convictions are given effect to the extent possible under [the] law."  <u>Bell v. Cone</u>, 122 S. Ct. 1843, 1849 (2002) (citing <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1518 (2000)).

The AEDPA establishes a highly deferential standard of review, which requires that state court decisions be given the benefit of the doubt.  <u>Woodford v. Visciotti</u>, 123 S. Ct. 357, 360 (2002).  A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's decision

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[12]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 7-13.

[13]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 11, pp. 1-18.

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).  "'Pure questions of law and mixed questions
of law and fact are reviewed under § 2254(d)(1), and questions of
fact are reviewed under § 2254(d)(2).'"  <u>Martin v. Cain</u>, 246 F.3d
471, 475-76 (5th Cir. 2001) (quoting <u>Corwin v. Johnson</u>, 150 F.3d
467, 471 (5th Cir. 1998)).

A state court decision is contrary to clearly established law
if the decision contradicts the governing law set forth by the
Supreme Court or if the state court decides a case differently than
the Court's precedent when the facts are materially
indistinguishable.  <u>Early v. Packard</u>, 123 S. Ct. 362, 365 (2002)
(quoting <u>Williams</u>, 120 S. Ct. at 1519).  A state court unreasonably
applies federal law if the court "identifies the correct governing
legal principle . . . but unreasonably applies that principle to
the facts of the prisoner's case." <u>Williams</u>, 120 S. Ct. at 1523.
To be an unreasonable application of federal law the state court
decision must be objectively unreasonable and more than simply
incorrect or erroneous.  <u>Lockyer v. Andrade</u>, 123 S. Ct. 1166, 1174
(2003) (citing <u>Williams</u>, 120 S. Ct. at 1521-23).

Because the AEDPA grants great deference to state
determinations of factual issues, a claim adjudicated on its merits

-7-

in state court and based on factual decisions will not be overturned on factual grounds unless the court determines that the decision was both incorrect and objectively unreasonable. Williams, 120 S. Ct. at 1522.   In reviewing a federal habeas petition, the court must presume that a factual determination made by the state court is correct unless the petitioner rebuts this presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

**B.    Summary Judgment**

A court may grant summary judgment when the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  The moving party has the responsibility of informing the court of the basis for its summary judgment motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .'" that demonstrate no genuine issue of material fact. Id. at 2553.  In response, the non-movant must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file show that there is a genuine issue of material fact requiring resolution through a trial. Id.  If the nonmoving party is unable to meet this burden, the motion for summary judgment will be granted. Fed R. Civ. P. 56(c).

Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." <u>Clark v. Johnson</u>, 202 F.3d 760, 764 (5th Cir. 2000).  The rule, however, only applies to the extent that it does not conflict with habeas rules.  <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002), <u>overruled on other grounds by Tennard v. Dretke</u>, 124 S. Ct. 2562 (2004).  Generally, in ruling on a motion for summary judgment the court resolves any doubts and draws any inferences in favor of the nonmoving party, <u>Hunt v. Cromartie</u>, 119 S. Ct. 1545, 1551-52 (1999) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986)), but 28 U.S.C. § 2254(e)(1) commands that factual findings of the state court are to be presumed correct.  Thus, 28 U.S.C. § 2254(e)(1) overrides the general summary judgment rule.  <u>Smith</u>, 311 F.3d at 668.  The petitioner is required to rebut the presumption of correctness by clear and convincing evidence; otherwise, the court will presume the factual determination of the state court is correct.  <u>Id.</u>; 28 U.S.C. § 2254(e)(1).

### III.  <u>Analysis</u>

**A.  Sufficiency of the Evidence**

Carlson asserts that the evidence presented at trial was insufficient to support his conviction.[14]

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] to determine whether the record evidence could reasonably

---

[14]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 8, 13.

> support a finding of guilt beyond a reasonable doubt
> . . . . [T]he relevant question is whether, after viewing
> the evidence in the light most favorable to the
> prosecution, *any* rational trier of fact could have found
> the essential elements of the crime beyond a reasonable
> doubt.

Jackson v. Virginia, 99 S. Ct. 2781, 2788 (1979) (emphasis in

original; see also Williams v. Puckett, 283 F.3d 272, 278 (5th Cir.

2002)).  The court must refer to the substantive elements of the

criminal offense as defined by state law to assess the sufficiency

of the evidence.  Jackson, 99 S. Ct. at 2791 n.16.  All credibility

choices and conflicting inferences are to be resolved in favor of

the verdict.  United States v. Cyprian, 197 F.3d 736, 740 (5th Cir.

1999).  Texas Penal Code § 22.04, the statute under which Carlson

was convicted,[15] provides:

> (a)  A person commits an offense if he intentionally,
>      knowingly, recklessly, or with criminal negligence,
>      by act or intentionally, knowingly, or recklessly
>      by omission, causes to a child, elderly individual,
>      or disabled individual:
>
>      (1)  serious bodily injury;
>
>      (2)  serious mental deficiency, impairment, or
>           injury; or
>
>      (3)  bodily injury.

TEX. PENAL CODE ANN. § 22.04(a)(1)-(3) (Vernon 2003).

Carlson argues that the record evidence is insufficient to

support his conviction.[16]  Specifically, Carlson argues that the

---

[15]Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8,
p. 295.

[16]Petition for a Writ of Habeas Corpus by a Person in State
Custody, Docket Entry No. 1, pp. 8, 13.

-10-

evidence is insufficient to establish that he caused C.C.'s injuries because there was no eyewitness testimony that Carlson ever treated C.C. abusively.[17]

Texas Penal Code § 6.04, the statute defining causation, states that

> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEX. PENAL CODE ANN. § 6.04(a) (Vernon 2003).  At trial, the State presented evidence showing that (1) Carlson was alone with C.C. when the serious bodily injury occurred;[18] (2) in a statement to police, Carlson admitted to having shaken C.C. until he became responsive and picking up C.C. so fast C.C.'s head snapped back;[19] (3) Faterkowski related that she told police officers about several prior incidents in which Carlson had handled C.C. roughly by throwing him five to six inches in the air, bouncing him roughly on his knee, and holding him only by his back and neck;[20] (4) Drs. Stein and Morriss both concluded that C.C.'s death was not accidental and that his injuries were inflicted by someone;[21] (5) Dr. Stein stated that the swelling of C.C.'s brain was the

---

[17]Id. at pp. 8, 13.

[18]Reporter's Record, Vol. 4, p. 80; Vol. 5, pp. 219-220, 237.

[19]Id. at Vol. 5, pp. 169-70.

[20]Id. at Vol. 5, pp. 67-69.

[21]Id. at Vol. 4, p. 42; Vol. 5, pp. 215-230.

result of shaking that involved high velocity impact of the brain against the inner table of the skull;[22] (6) Carlson acted indifferent and detached when C.C. was ill and in the hospital;[23] and (7) Faterkowski testified that she had never shaken C.C. or handled him roughly.[24]

The state appellate court applied the <u>Jackson v. Virginia</u> standard and found that the evidence presented by the State was sufficient to show that Carlson caused C.C.'s injuries.[25]  After viewing the record evidence in the light most favorable to the prosecution, the court concludes that this decision is neither contrary to clearly established federal law nor "unreasonable" in light of the evidence presented at trial.  28 U.S.C. § 2254(d). Accordingly, this ground for relief fails.

## B.   Ineffective Assistance of Trial Counsel

Carlson next asserts that he received ineffective assistance of counsel because his trial counsel failed to investigate or prepare for trial.[26]

---

[22]<u>Id.</u> at Vol. 5, p. 221.

[23]<u>Id.</u> at Vol. 4, p. 70; Vol. 5, pp. 102-03.

[24]Reporter's Record, Vol. 5, p. 26.

[25]<u>Carlson v. State</u>, No. 01-04-00880-CR, slip op., 2005 WL 3315252, at *5 (Tex. App. -- Houston [1st Dist.] November 4, 2004, pet. ref'd) (mem. op., not designated for publication), contained in <u>Ex parte Carlson</u>, Appl. No. WR-66,733-01, Docket Entry No. 8, p. 48.

[26]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 7, 10-11.

The Constitution guarantees a criminal defendant effective assistance of counsel. U.S. Const. amend. VI. A petitioner asserting an ineffective assistance of counsel claim must satisfy the standard set forth in Strickland v. Washington, 104 S. Ct. 2052 (1984). He must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced his case. Id. at 2064.

With regard to the first prong, performance is deficient if it falls below an objective standard of reasonableness. Id. In making this determination judicial scrutiny of counsel's performance is to be highly deferential, id. at 2065, with "'[the court] . . . strongly presum[ing] that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy[.]'" West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996) (quoting Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992)). A defendant must identify the acts or omissions of counsel that are alleged not to be the result of reasonable professional judgment. Strickland, 104 S. Ct. at 2066. The court must then determine whether the identified acts were outside the wide spectrum of professionally reasonable assistance. Id. A mere error by counsel, even if professionally unreasonable, does not warrant setting aside the state court judgment if the error did not affect the judgment. Id.

Regarding the second prong, the appropriate test for determining actual prejudice is whether "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. In making this determination the focus is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 113 S. Ct. 838, 844 (1993) (citing Strickland, 104 S. Ct. at 2064).

Carlson asserted this same claim in his state application for a writ of habeas corpus.[27] Because the Texas Court of Criminal Appeals denied Carlson's state application, the state court adjudicated the claim on its merits. See Singleton v. Johnson, 178 F.3d 381, 384 (1999); Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim . . . ."). Therefore, in order for this court to grant habeas relief it must determine that the state court's denial of relief was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). The relevant issue before this court is "whether the state court's decision -- that [Carlson] did not make the Strickland-showing -- was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (Strickland), for succeeding on his [ineffective

---

[27]Ex parte Carlson, App. No. WR-66,733-01, Docket Entry No. 8, pp. 2-13.

-14-

assistance of counsel] claim." Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) (emphasis omitted).

Carlson argues that he received ineffective assistance of counsel because his counsel failed to investigate or prepare for trial.[28] Specifically, Carlson alleges that his counsel failed to investigate, interview, or call certain witnesses; failed to adequately investigate possible defenses; failed to object to or request a limiting instruction on extraneous offense evidence; failed to object to hearsay evidence; and failed to file a pretrial motion to suppress an illegally obtained statement.[29]

On habeas review the state court weighed all of the evidence and found that

> [Carlson] fails to show what a more in depth investigation would have revealed, and establish facts to a reasonable probability that, but for counsel's failure to further investigate, the result of the proceeding would have been different;[30]

> [Carlson] fails to show any error on the part of trial counsel for not objecting to the evidence in question;[31]

> [Carlson] has failed to show how he was harmed by trial counsel's failure to object because [Carlson] fails to show that the trial judge would have committed error in overruling the objection if it were made;[32]

---

[28]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 7.

[29]Id. at pp. 7, 10-11.

[30]Ex parte Carlson, App. No. WR-66,733-01, Docket Entry No. 8, p. 25, No. 1.

[31]Id., No. 2.

[32]Id., No. 3.

-15-

[Carlson] fails to establish that counsel was ineffective for failing to file a motion to suppress evidence because he fails to show a benefit that would have come from the motion, . . . , or state how he was harmed or prejudiced by the decision not to file the motion;[33]

[Carlson] fails to allege sufficient facts, which if true, would entitle him to relief on his claims that . . . trial . . . counsel was ineffective;[34]

The totality of the representation afforded [Carlson] was sufficient to protect his right to reasonably effective assistance of counsel in the primary case;[35]

[Carlson] fails to show, in all things, that trial . . . counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.[36]

In all things, [Carlson] has failed to demonstrate that his conviction was improperly obtained.[37]

The Texas Court of Criminal Appeals adopted the trial court's findings when it denied habeas relief.[38]

Under Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

---

[33]Id., No. 4.

[34]Id., No. 5.

[35]Id. at p. 36, No. 6.

[36]Ex parte Carlson, App. No. WR-66,733-01, Docket Entry No. 8, p. 36, No. 7.

[37]Id., No. 10.

[38]Id. at cover.

Strickland, 104 S. Ct. at 2065.  With regard to the second prong of the Strickland test, a "mere possibility" that a different result might have occurred is not sufficient to demonstrate prejudice.  Lamb v. Johnson, 179 F.3d 352, 359 (5th Cir. 1999).

Carlson alleges that his trial counsel was ineffective for failure to investigate, interview, or call certain witnesses.[39]

> Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.

Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001) (internal quotation omitted).  Carlson has provided no competent evidence to show that additional investigation or witnesses would have changed the verdict rendered against him.  Carlson has supplied no additional affidavits or evidence from the witnesses he believes should have been called to show that they would have provided favorable testimony.  Carlson's own speculations as to what these witnesses might have said are insufficient to show a reasonable probability that the result of the trial would have been different.  U.S. v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983). "Hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."  Martin v. McCotter, 796 F.2d 813, 819 (5th Cir. 1981).  The court therefore concludes that the state

---

[39]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 7, 10-11.

court's decision regarding uncalled witnesses was not contrary to, or an unreasonable application of, federal law.   28 U.S.C. § 2254(d)(1).

Carlson next complains that his trial counsel failed to present evidence that Faterkowski or Glass could have caused the injuries to the child.[40]  Carlson's conclusory statement is made without any evidence showing that either woman could have caused the injury.   The state habeas court found that Carlson failed to show that his trial counsel's conduct fell below an objective standard of reasonableness or that he was prejudiced by his counsel's conduct.[41]  Evidence was presented at trial that the injury that caused C.C. serious bodily harm occurred between the baby's release from the hospital at 7:30 p.m. on April 5 and his return to the hospital at 9:00 p.m. on April 6, and that Carlson was alone with C.C. for much of this time.[42]  Therefore, any argument that Glass or Faterkowski caused C.C.'s injuries could have been easily rebutted by the State.  Carlson has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 104 S. Ct. at 2065.  The court therefore concludes that the state

_____

[40]Id. at pp. 7, 10.

[41]Ex parte Carlson, Appl. No. WR-66,733-01, Docket Entry No. 8, p. 26, No. 7.

[42]Reporter's Record, Vol. 4, p. 80; Vol. 5, pp. 219-220, 237.

-18-

court's decision regarding trial counsel's strategy was not contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d)(1).

Carlson next asserts that his trial counsel was ineffective for failing to object to or request a limiting instruction on extraneous offense evidence from two witnesses, Faterkowski and Glass.[43] The state habeas court found that Carlson failed to show that the failure to make an objection was an error or that Carlson was prejudiced by the failure to make an objection.[44] Carlson has made no showing that an objection to or instruction limiting the evidence was warranted, that such an objection would have been sustained, that a request for a limiting instruction would have been granted, or that the result of the proceeding would have been different had an objection been made or a limiting instruction been requested. Carlson has also made no showing of prejudice. "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994). Carlson has not overcome the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 104 S.Ct. at 2065. The court therefore concludes that the state court's

---

[43]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 12.

[44]Ex parte Carlson, App. No. WR-66,733-01, Docket Entry No. 8, p. 25, Nos. 2 and 3.

decision regarding extraneous offense testimony was not contrary to, or an unreasonable application of, the Strickland standard. 28 U.S.C. § 2254(d)(1).

Carlson next asserts that his trial counsel was ineffective for failing to object to hearsay evidence, told to Faterkowski and Glass by Carlson's brother, that Carlson had picked up C.C. too fast.[45]  Carlson asserts that this evidence was presented by Faterkowski and Glass during their testimony.  However, the statement made by Carlson's brother was presented as part of a signed voluntary statement made by Carlson to police.[46]  The state court found that "[Carlson] fail[ed] to show any error on the part of trial counsel for not objecting to the evidence in question."[47]  The state court also found that "[Carlson] . . . failed to show how he was harmed by trial counsel's failure to object because [Carlson] fails to show that the trial judge would have committed error in overruling the objection if it were made."[48]  The court concludes that the state court's decision regarding trial counsel's failure to make an objection to "hearsay" evidence was not contrary to, or an unreasonable application of, the Strickland standard.  28 U.S.C. § 2254(d)(1).

---

[45]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 12.

[46]Reporter's Record, Vol. 5, p. 171.

[47]Ex parte Carlson, App. No. WR-66,733-01, Docket Entry No. 8, p. 25, No. 2.

[48]Id., No. 3.

Finally, Carlson argues that his trial counsel was ineffective because counsel failed to file a pretrial motion to suppress Carlson's statement to police on the grounds that it was illegally obtained.[49]   The state habeas court found that Carlson failed to show that filing the motion would have provided any benefit and failed to show how he was prejudiced by the failure to file the motion.[50]   The record reflects that Carlson's statement was made voluntarily, that Carlson knew he was free to leave the police station at any time, and that he knew he was not required to make a statement.[51]   The record also reflects that Carlson arrived at the police station by his own means, that Carlson stated he came to the police station to help in any way he could, and that Carlson left the police station on his own after giving his statement.[52]   "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Miranda v. Arizona, 97 S. Ct. 711, 714 (1977).   The court therefore concludes that the state court's decision regarding trial counsel's decision not to file a motion to suppress Carlson's statement was not contrary to, or an

---

[49]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 12.

[50]Ex parte Carlson, App. No. WR-66,733-01, Docket Entry No. 8, p. 25, No. 4.

[51]Reporter's Record, Vol. 5, pp. 161-62, 65.

[52]Id. at Vol. 5, pp. 158, 167, 187.

unreasonable application of, the <u>Strickland</u> standard.   28 U.S.C.
§ 2254(d)(1).

## C.   Ineffective Assistance of Appellate Counsel

Carlson argues that he received ineffective assistance from
his appellate counsel when counsel deprived Carlson of his right
to file a petition for discretionary review with the Texas Court
of Criminal Appeals.[53]  Specifically, Carlson asserts that appel-
late counsel failed to notify Carlson that the appellate court had
affirmed his conviction; and, therefore, Carlson was unable to
timely file a petition.[54]

However, Carlson's appellate counsel filed a timely petition
for discretionary review on Carlson's behalf with the Texas Court
of Criminal Appeals, which was refused.[55]  A petitioner asserting
an ineffective assistance of appellate counsel claim must satisfy
the standard set forth in <u>Strickland v. Washington</u>, 104 S. Ct.
2052 (1984).   Carlson has not satisfied either prong of the
<u>Strickland</u> test.   The court therefore concludes that the state
court's decision was not contrary to, or an unreasonable
application of, federal law.   28 U.S.C. § 2254(d)(1).

––––––––––––––

[53]Petition for a Writ of Habeas Corpus by a Person in State
Custody, Docket Entry No. 1, p. 7.

[54]<u>Id.</u>

[55]<u>Carlson v. State</u>, No. PD-0232-06, 2006 Tex. Crim. App. LEXIS
875, at *1; Appellant's Petition for Discretionary Review.

### IV.  <u>Conclusion and Order</u>

The court **ORDERS** the following:

1.  Respondent Quarterman's Motion for Summary Judgment
    with Brief in Support (Docket Entry No. 11) is
    **GRANTED.**

2.  Carlson's Petition for a Writ of Habeas Corpus by
    a Person in State Custody (Docket Entry No. 1) is
    **DENIED.**

3.  Carlson's Motion to Dismiss Respondent's Motion for
    Summary Judgment (Docket Entry No. 12) and
    Carlson's Motion for an Evidentiary Hearing (Docket
    Entry No. 13) are **DENIED.**

**SIGNED** at Houston, Texas, on this 10th day of August, 2007.

                                                 SIM LAKE
                         UNITED STATES DISTRICT JUDGE

-23-